## CULLY v. ISHAM.

(Supreme Court, Appellate Division, Fourth Department.   March 4, 1908.)

1. CONTRACTS—CONSTRUCTION—ENTIRE AND SEPARABLE CONTRACTS—CONTRACTS
      FOR SERVICES.
         In determining whether various items for services constitute a single, entire cause of action, or whether there are separate and distinct claims, courts will take cognizance of considerations of expediency, of reasonable enforcement, of usage, and of what may be supposed to have been the intent of the parties to the contract.
         [Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, §§ 754– 757.]

2. INTEREST—TIME FROM WHICH INTEREST RUNS—ENTIRE OR SEPARABLE CON-
      TRACT—WAGES.
         Plaintiff's intestate worked for defendant as clerk and bookkeeper for several years; his wages being increased from time to time. He opened an account in his employer's books with himself, and charged to himself from time to time amounts of cash drawn, but no entries of credits on account of wages were made. During his period of services intestate nego-

tiated with another with a view to leaving defendant's services, but remained with defendant on the latter voluntarily raising his wages. *Held*, upon consideration of the terms of the agreement and the conduct of the parties, as well as the form of the pleading, which was framed to recover the sum due for the entire period, that the contract was not separable, and plaintiff was therefore entitled to interest on the claim only from the beginning of the action.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 29, Interest, §§ 106–112.]

Spring, J., dissenting.

Appeal from Judgment on Report of Referee.

Action by Samuel Cully, as administrator of Samuel A. Cully, deceased, against Francis N. Isham. From a judgment for plaintiff, defendant appeals. Reversed and new trial granted, unless plaintiff consent that verdict be reduced.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Charles D. Newton, for appellant.

Fletcher C. Peck, for respondent.

ROBSON, J. Plaintiff's intestate was employed by defendant; his duties including those of clerk, bookkeeper, and general utility man, from April 9, 1892, to December 31, 1899. The rate of wages he was to receive was agreed upon when he began his service at $7.50 per week. This was increased at the beginning of the year 1893 to $9. At the end of that year it was increased to $10, at which rate it continued till about August 1, 1894, when it became $12 per week, and remained at that rate till the termination of his employment. Deceased, at the beginning of his service, opened an account in his employer's books between the latter and himself, in which he entered amounts of cash charged to himself at intervals extending over the period of his service. No entries were made in the books or credits given therein for or on account of his wages. There was not at any time a settlement between deceased and defendant, and the cash entries already referred to are the only entries apparently relating to this wages account appearing in defendant's books of account or elsewhere.

The referee has found, basing this conclusion to some extent apparently upon a statement of account furnished by defendant to plaintiff after the death of intestate, that the contract of hiring, under which the services were rendered, was separable, the separate contracts ending with each calendar year during the term such service continued, and therefore that plaintiff was entitled to recover interest on the balance of wages remaining unpaid at the end of each year. We do not think that the testimony shows that this was either the agreement or understanding of defendant and deceased as to their contract. It is true that at the end of each of two calendar years during the term deceased's wages were raised. But that it was not understood that the hiring was for a year or any definite period appears clearly from the fact that about August, 1894, deceased negotiated with one Anderson with a view

to entering his employment, and defendant and deceased thereafter agreed that, if the latter would continue in defendant's employ, the wages he should receive should be $12 per week, an increase of $2. If deceased had been hired for that year, why should he when his contract was but half completed be negotiating for other employment, and why should defendant voluntarily make this material increase in the wages he was paying, when, if the hiring was for a year, he was entitled to at least five months' service at the existing rate? As was said by this court in Shafer v. Pratt, 79 App. Div. 447–450, 80 N. Y. Supp. 109, 112:

"The question whether various items for services constitute a single, entire cause of action, or whether they are respectively different and distinct claims, is not always free from difficulty. Courts must bring somewhat to their aid in its solution considerations of expediency, of reasonable enforcement, of usage, and of what may be supposed to have been the intent of the parties."

The intent of the parties is not always clearly disclosed; but in this case it does appear that the parties did not look upon or treat the contract of hiring as one from year to year, but rather as a single, continuous contract, terminable, however, at any time at the will of either party thereto. Smith v. Velie, 60 N. Y. 106; Denise v. Denise, 110 N. Y. 567, 18 N. E. 368.

Another consideration pointing unmistakably to the same conclusion is found in the form of pleading adopted by plaintiff. He has chosen to group in his first cause of action all claims for unpaid wages remaining during the years 1892, 1893, 1894, and 1895, ending the statement of this separate cause of action with the words:

"That there remains due and unpaid thereon the sum of $725.32, with interest thereon from January 1st, 1896."

Unless it was intended to treat the contract of hiring as single and continuous during that period, and not as one maturing at the end of each year of the term in a separable contract upon which the balance of wages unpaid would then become due, why was this form of pleading adopted? It was not adopted because it was claimed that there was any new oral or written contract then actually made to begin with the year 1896, or that there had been any settlement or demand or negotiation looking to a determination of the amount of unpaid balance remaining at the close of the year 1895, for nothing of the kind appears in evidence, and the rate of wages remained the same for the first part of the year 1896 as it had been during the two previous years. Perhaps the query may be answered by the suggestion that, if the services performed by deceased during the first two years of this period had been pleaded as having been rendered in fulfillment of separate contracts terminating with the year, the statute of limitations would have furnished a complete defense to each of these two separate causes of action. It does not seem consonant with the rules by which pleadings are tested and construed, nor, indeed, with ordinary business fairness, to permit plaintiff to insist that the same agreement was single and continuous up to the point where his interests are served by such a claim, and assume a different position as to the same

contract by pleading it thereafter as separate and separable when his interests will be more fully served by that interpretation. Plaintiff was entitled to recover interest on the claim from the time of commencement of the action. McCollum v. Seward, 62 N. Y. 316.

Judgment reversed and new trial granted, with costs to appellant to abide the event, unless plaintiff within 20 days consents that the same be reduced by deducting therefrom the amount allowed by the referee as interest on the claim prior to the commencement of the action, in which event the judgment, as so modified, is affirmed, without costs. All concur, except SPRING, J., who dissents.